**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 04-087-02T** |
| | : | |
| **HECTOR SANTANA** | : | |

**GOVERNMENT'S SAFETY VALVE OBJECTION**

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephen G. Dambruch, Assistant United States Attorney, and hereby respectfully requests that this Honorable Court deem the defendant ineligible for relief under 18 U.S.C. §3553 and USSG §5C1.2, and USSG §2D1.1(e)(6). The grounds for the government's objection are set forth in the attached memorandum of law.

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on the 20th day of July, 2005, a copy of the within Government's Objection was sent by facsimile transmission to John F. Cicilline, Esquire, at 401-454-5600 and Dennis J. Jenkins, Supervising U.S. Probation Officer, at 401-752-7399.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CR. No. 04-087-02T** |
| | : | |
| **HECTOR SANTANA** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS SAFETY VALVE OBJECTION**

Introduction

On April 5, 2005, the defendant appeared before the Court and pled guilty to one count of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and a second count of possession with intent to distribute in excess of five kilograms of cocaine. The defendant further acknowledged, as part of the plea colloquy, that he had actually possessed 33.8 kilograms of cocaine, wrapped in thirty-four separate kilogram sized packages.

Hoping to become eligible for the benefits afforded by the "safety valve" provisions of the United States Code and the United States Sentencing Guidelines, the defendant submitted to an interview by law enforcement officers on June 2, 2005. The subject matter included the defendant's personal information, his association with and knowledge of other known drug traffickers, and the scope of his own narcotics distribution activities.

During the interview, the defendant stated that he became involved in the drug trade sometime in May 2004. The defendant claimed that his co-defendant, Jose Cabreja (Cabreja), met a subject named "Pecoa" at the Brilliante Restaurant on Broad Street, Providence, Rhode Island. After Pecoa allegedly asked Cabreja to help him facilitate his drug business, Cabreja introduced the defendant to Pecoa, who then retained the services of defendant and Cabreja.

The defendant stated that his role in the business was to count and store the cash proceeds of the organization's drug sales. According to the defendant, Cabreja would deliver Pecoa's cocaine to customers in the Providence area and then bring the proceeds to the defendant, who would count the money for Pecoa. The defendant stated that he would then drive the large sums of currency to the EZ-mini storage facility and place it into a white Volkswagen Vanwagon located within one of the storage lockers (members of the Rhode Island State Police located and seized this vehicle after the defendant's arrest, but no money was recovered from it). The defendant claimed that he would transport up to $70,000.00 at a time to the Volkswagen van, at one point observing over $700,000 in United States currency inside of the vehicle's secret storage compartment.

The defendant explained that Pecoa used the money stored in the van to purchase additional quantities of cocaine. He stated

the money would be transported to Houston, Texas in a BMW X5 sports utility vehicle, which was parked inside of another storage bin at the EZ-Mini Storage. The defendant acknowledged meeting Barbara Gonzalez, the renter of that storage unit, but denied knowing where she lived, claiming she was Pecoa's friend. He further denied knowing that Gonzalez listed her address as 102 Peace Street, Providence, Rhode Island on the EZ-Mini Storage paperwork (at the time of his arrest, the defendant resided at 104 Peace Street, Providence, Rhode Island).

When asked about the currency found stashed in his bedroom, the defendant replied that the money came from the 2003 sale of a house in Texas. The defendant stated that while he was living in Houston, Texas in 2000, he used his name to obtain a mortgage and purchase a house for his aunt, Angela Baez, because of her poor credit (in the Presentence Report, the defendant never mentions residing in Houston, Texas). The defendant could not remember the address of the property, the purchase price he paid for the house, the amount of the down payment or the total sum of the mortgage loan. He claimed that Angela Baez was paying the loan, but he did not know how much the loan was for or the amount of the monthly payments.

At some point in 2003, the property was sold by a realtor and the defendant received a check for over $20,000.00. The defendant stated he cashed that check at a bank in Texas, but

could not remember its name. He claimed that he was holding the money at his residence and was waiting to give it to his aunt. The defendant stated that, despite the fact that the money he was holding belonged to his aunt and that he intended to return it to her at some point, he had not notified her about the police seizure of the currency. He then clarified that Ms. Baez was actually not a blood relative, but just a close family friend.

When advised by Rhode Island State Police Detective Todd Neill that the BMW sports utility vehicle that the defendant claimed Pecoa used to transport cash and drugs was registered to Sandra Baez of Kenner, Louisiana, the defendant denied any connection between Angela and Sandra Baez. The defendant claimed that Angela Baez still resided in Texas, but he did not know the address.

Detective Neill also showed the defendant a copy of a drug ledger found in his bedroom at 104 Peace Street, Providence, RI. The defendant stated that the figures represented the number of kilograms (34) and the price $21,000.00 per kilogram, which allowed him to figure out the amount of money he would be counting. The defendant claimed that the ledger also included a list of customers also on the ledger, but that he did not know any of them personally. He did, however, later acknowledge that he had previously met one customer, a black male named Will or William, on several occasions.

After being challenged by Detective Neill and others, the defendant finally conceded that he actually met Pecoa in 2003, not 2004 as he had previously stated. The defendant acknowledged that he and Cabreja had rented a garage for Pecoa on Fern Street in Providence prior to May 2004. Santana did not indicate what the garage was used for in 2003, but did confirm that Pecoa had given him and Cabreja a Dodge Minivan with an electronic hide to store in the garage at some later point. Santana also stated that the garage was used to store cocaine after May 2004.

The defendant stated that despite the nature and extent of his dealings with Pecoa, he did not know his real name nor his actual address. The defendant believed that Pecoa might have lived in Pennsylvania, but now may be in the Dominican Republic. He described Pecoa as a Dominican male in his late thirties who drove a white Ford Taurus with a New York regristration plate.

The government now challenges the defendant's eligibility for relief under the "safety valve" provisions.

Argument

Under 18 U.S.C. § 3553(f), "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . ." that

the defendant satisfies five specific criteria. Sections 2D1.1(b)(6) and 5C1.2 of the United States Sentencing Guidelines implement the statute and also mandate a two-level decrease in the guidelines offense level. Although the government agrees that the defendant satisfied the first four factors of the so-called "safety valve" provision,[1] it contends that he failed satisfy to the fifth prong of the test. That factor states:

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The "safety valve" provision was enacted by Congress "to mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug trafficking schemes." United States v. Ortiz-Santiago, 211 F.3d 146, 150 (1st Cir. 2000). A defendant seeking a "safety valve" decrease bears the burden of showing that he has made full

---

[1] The first four factors are: 1) the defendant has no more than one criminal history point; 2) the defendant did not use violence or threaten violence or possess a firearm or other dangerous weapon in connection with the offense; 3) death or serious bodily injury did not result; and 4) the defendant was not an organizer, leader, manager, or supervisor and was not engaged in a continuing criminal enterprise.

disclosure to the government. United States v. Matos, 328 F.3d 34, 39 (1st Cir. 2003). "[A] safety valve debriefing is a situation that cries out for straight talk; equivocations, half-truths, and veiled allusions will not do." Id. The defendant "cannot simply respond to questions while at the same time keeping secret pertinent information concerning the offense of conviction and related offenses that falls beyond the scope of direct interrogation." Id. at 41. Simply put, a defendant seeking the advantages of the "safety valve" provision is obliged to truthfully provide all information to the government. United States v. Marquez, 280 F.3d 19, 25 (1st Cir. 2002).

The government may challenge defendant's eligibility under the "safety valve" by directing the Court's attention to the defendant's lack of candor or completeness. United States v. Ramirez, 94 F.3d 1095, 1102 (1st Cir. 1996). There is no requirement, however, that the government offer extrinsic evidence to rebut the defendant's claim of truthfulness. Marquez at 24. Rather, the government points out the defendant's suspicious omissions at the sentencing hearing and the Court is then entitled to make a common sense judgment. United States Montanez, 82 F.3d 520, 523 (1st Cir. 1996).

Here, the defendant did submit to an interview, but then attempted to minimize his narcotics related activities. The government finds it incredulous that after only a short period of

time and without any prior relationship the mysterious Pecoa entrusted large sums of money to the defendant. It also is just not plausible that someone with such a crucial role in the organization would not know such things as Pecoa's true name, his address, or his telephone number.

Furthermore, the defendant's activities on August 15, 2004 tend to discredit his attempt to limit his involvement in the organization to that of only a counter of money. The defendant met with and accompanied Cabreja into the storage unit. He then participated in the process of securing and transporting a large quantity of cocaine. Although not carrying the cocaine in his own vehicle (in what may have actually been an attempt to limit his exposure to criminal liability), it was the defendant who possessed keys for all of the involved vehicles, the gate code for the storage facility, keys for all of the storage lockers, a drug ledger and more than $20,000 in United States currency.

It is apparent that the defendant's strategy regarding the "safety valve" interview was to qualify for relief while avoiding full disclosure. Unfortunately for him, Congress set complete disclosure as the price for "safety valve" admission and placed the burden on the defendant to prove that he has paid up. United States v. Flanagan, 80 F.3d 143, 146-47 (5th Cir. 1996). Unless and until the defendant provides additional and complete information about the true nature and scope of his drug dealing

activities, this is a burden he simply can not sustain.

Conclusion

For all of the above stated reasons, the government respectfully requests that this Honorable Court declare the defendant ineligible for relief under the "safety valve" provisions.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

STEPHEN G. DAMBRUCH
Assistant U.S. Attorney

CERTIFICATION

I hereby certify that on the 20th day of July, 2005 I sent by facsimile transmission a true copy of the within Government's Memorandum to John F. Cicilline, Esquire at 401-454-5600 and Dennis J. Jenkins, Supervising U. S. Probation Officer, at 401-752-7399.